IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0332
════════════
 
Bed, Bath & Beyond, Inc., 
Petitioner,
 
v.
 
Rafael Urista, 
respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the First District of 
Texas
════════════════════════════════════════════════════
 
 
Argued June 10, 
2005
 
 
Justice Medina filed a dissenting 
opinion, in which Chief Justice 
Jefferson joined.
 
Merchandise 
does not ordinarily fall from the shelves of Bed, Bath and Beyond (“BBB”) for no 
reason. But on September 19, 1998, trash cans stored atop a twelve-foot high 
shelf, along with other merchandise, fell into the aisle where Rafael Urista and 
his wife were shopping. BBB argues it was no one’s fault; it just happened. It 
is undisputed that some of this merchandise struck Urista,[1] but even if this were in dispute, it 
would not matter to this appeal. What matters here is whether the jury’s 
exoneration of BBB, when all the evidence in the case indicates it caused the 
occurrence, was influenced by the trial court’s inferential rebuttal 
instruction.
David 
Traxler, a district manager for BBB and its representative at trial, agreed that 
had BBB’s employee, Reggie Neal, been doing his job properly the day of the 
accident Urista would not have been injured. Traxler was manager of the store on 
that day and was responsible for investigating the incident. He confirmed that 
neither Urista nor any other customer had caused the trash cans to fall. He 
agreed that the most likely cause was the inattention of BBB’s employee, which 
he characterized as “simply a case of human error” rather than negligence.[2]
This was, in 
part, BBB’s defense at trial, arguing that accidents can happen without fault. 
But instead of offering evidence to support this no-fault defense, BBB asked 
for, and obtained, two inferential rebuttal instructions, unavoidable accident 
and new and independent cause, even though there was no evidence to support the 
submission of either instruction. BBB now concedes this was error.[3] The Court agrees[4] but concludes that the error was 
harmless. To reach this conclusion, the Court turns a blind eye to the 
conditional submission in the jury charge and focuses on evidence that is 
irrelevant to the jury’s actual verdict.
The jury was 
given two inferential rebuttal instructions,[5] despite Urista’s protest, and then 
asked the following two questions:
Question 
No. 1:
Did the 
negligence, if any, of Bed, Bath, and Beyond, Inc. proximately cause the 
occurrence in question? 
 
Answer 
“Yes” or “No”
 
Answer: 
NO
 
If you 
have answered Question No. 1 “Yes” answer Question No. 2; otherwise, do not 
answer Question No. 2.
 
Question No. 2:
 
What sum of 
money, if paid now in cash, would fairly and reasonably compensate Rafael Urista 
for his injuries, if any, resulting from the occurrence in question?
 
Answer: 
___
 
(emphasis 
added). The first question asks if BBB’s negligence caused the trash cans to 
fall, and the second question asks whether the falling trash cans caused Urista 
injury and how much BBB should pay.[6] The jury did not answer the question 
about Urista’s “injuries, if any,” because it was conditioned on an affirmative 
answer to the first question.
The Court, 
however, concludes that the erroneous, unavoidable accident instruction was 
harmless by assuming that had the jury answered the second question, it would 
have concluded that Urista was not injured by the falling trash cans. Only by 
mixing these two issues together — the one the jury answered and the one the 
jury did not — can the Court possibly justify its result in this case. 
The Court 
explains that instead of relying on the unavoidable accident instruction the 
jury could have reasonably concluded “that Urista failed to carry his burden of 
proof”; i.e., failed to prove that he was struck and injured by the falling 
trash cans. ___ S.W.3d at ___. When the Court’s explanation is divided in parts, 
as was the court’s charge, the error becomes apparent. For the jury to have 
disbelieved that Urista was struck, it would first have to reject 
both Urista’s and BBB’s testimony on the subject. As the record stands, 
BBB had no support for its appellate assertion that the trash cans fell in the 
absence of fault (which is at the heart of the unavoidable accident 
instruction). Urista testified that they fell, and BBB testified that “[Reggie] 
caused the accident” as a result of “human error.” If the Court is right that 
any jury, at any time, may ignore uncontested evidence of fault on an “accidents 
happen” theory, then verdicts will cease to be tethered to the evidence 
presented at trial.
I suspect, 
however, that the driving force behind the Court’s decision has more to do with 
the second part of its explanation — that Urista failed to prove that he was 
injured by the falling trash cans. I agree that BBB made a persuasive 
case that Urista was “not injured” by falling trash cans; therefore, had the 
jury reached Question 2, a “No” answer would have been difficult for Urista to 
overcome. Urista’s credibility, undermined by his apparent exaggeration of 
damages, may well explain the jury’s answer to Question 1, and the Court’s 
disposition here. But we ask jurors to decide only the questions asked, without 
regard to the effect of their answers. The trial court in this case sanctioned 
the jury’s deciding “who should win” (without regard to the evidence) by 
submitting an unavoidable accident instruction, and the Court today stamps its 
imprimatur on that practice.[7]
The Court’s 
conclusion that Urista failed to carry his burden of proof is thinly reasoned, 
incorporating none of BBB’s arguments on the subject. For example, BBB argues 
that Urista’s evidence “was grossly lacking” because it failed to show that BBB 
had any actual or constructive knowledge that the trash cans posed an 
unreasonable risk of harm. While BBB might not reasonably expect a stack of 
feather pillows, falling from twelve feet, to injure a customer shopping below, 
it should expect it from a stack of trash cans. Moreover, Traxler testified that 
BBB had training videos for its employees “show[ing] very similar accidents. 
Show[ing] people putting stuff up and dropping it on the other side.” BBB was 
clearly aware of the potential problem. Assuming then that this contention goes 
to the duty of care, I have no difficulty imposing a duty on BBB to exercise 
reasonable care not to turn their stores into hard-hat areas when retrieving 
merchandise that BBB has chosen to store above its customers’ heads rather than 
in stock rooms or warehouses. 
BBB stored 
trash cans, and other items, on the uppermost shelves of its merchandise 
displays, stacking these cans inside one another to conserve space. The record 
further establishes that on the day of Urista’s alleged injury, a BBB employee 
was on a ladder attempting to retrieve a trash can for another customer. Urista 
and his wife testified that Urista was injured when that employee caused the 
trash cans and other items to fall on him. BBB conceded that its employee was 
careless but characterized his conduct as human error rather than 
negligence.
I am not 
certain what distinguishes human error from negligence in this instance, but I 
do understand the testimony’s relevance to the unavoidable accident instruction 
and to BBB’s closing argument which emphasized the erroneous instruction to the 
jury in the following:
 
You see, 
all of these facts preponderate that the accident did not happen like they say. 
And more importantly, it wasn’t caused by Bed, Bath & Beyond’s negligent 
conduct. Because the court tells you that there is such a thing as an 
unavoidable accident. I’m not saying that BB&B wasn’t around and might have 
caused it, that doesn’t mean they were negligent, and the court tells that to 
you. 
 
People 
have to understand that every accident is not caused by negligence. There’s a 
lot of accidents in this world that are unavoidable accidents. That’s what the 
Court says to you. It’s only plaintiff’s lawyers who say, every time there’s an 
accident somebody has to be responsible because that’s what they want. They want 
to create that type of litigation.
 
And 
sometimes stuff happens. . . . it wasn’t intended to happen, it just did.
 
 
Although BBB 
contends that there is ample evidence that the falling trash cans were not the 
cause of Urista’s back injury, it cannot argue that the cans did not fall, and 
its contention that negligence played no part in causing them to fall is 
exceedingly weak. In fact, I agree with the court of appeals’ suggestion that 
the jury’s verdict was probably against the great weight of the evidence and 
that the unavoidable accident instruction was likely the sole basis for the 
jury’s answer to the negligence question. 132 S.W.3d at 522, 523. I have found 
no other explanation for the jury’s answer to Question 1.
The 
concurring opinion says there is evidence to explain the jury’s refusal to find 
BBB negligent, but it does not explain what evidence that might be. Instead, it 
speculates that the trash can “may have been teetering on the shelf for a long 
time, and could have been dislodged by another customer rather than the 
employee.” ___ S.W.3d at ____ (Brister, J. concurring). There is, of course, no 
evidence of this, and what evidence there is, such as BBB’s investigation, and 
its conclusions about the occurrence,[8] are discounted as mere belief. 
Id. 
I, however, 
agree with the concurrence that sometimes accidents happen when no one is 
negligent. Conversely, accidents happen at times when someone is negligent. And 
in the spirit of the concurring opinion, I would speculate that the latter is 
more often the case than the former. This is why inferential rebuttal 
instructions are the exception rather than the norm, and why an unavoidable 
accident instruction is proper only when there is evidence that the event was 
proximately caused by a condition or circumstance beyond the control of any 
party to the event. See Hill v. Winn Dixie Texas, Inc., 849 S.W.2d 
802, 803 (Tex. 1992).
The 
concurring opinion, however, suggests that the unavoidable accident instruction 
is a truism and that its inclusion in the charge can never be harmful error. But 
it is potentially true only in those cases in which there is evidence and 
therefore a question about whether conditions beyond a party’s control caused 
the accident. See Dillard v. Tex. Elec. Coop., 157 S.W.3d 429, 432 (Tex. 
2005) (“The purpose of these instructions is to advise the jurors, in the 
appropriate case, that they do no have to place blame on a party to the suit 
if the evidence shows that conditions beyond the party’s control caused 
the accident in question or that the conduct of some person not a party to the 
litigation caused it.”) (emphasis added); see also Reinhart v. 
Young, 906 S.W.2d 471, 472 (Tex. 1995) (Unavoidable accident “instruction is 
most often used to inquire about the causal effect of some physical condition or 
circumstance such as fog, snow, sleet, wet or slick pavement, or obstruction of 
view, or to resolve a case involving a very young child who is legally incapable 
of negligence.”). The views of the concurring justice simply cannot be 
reconciled with what we previously said in Reinhart:
 
[E]xcept in certain 
types of cases, “courts should refrain from submitting an unavoidable accident 
instruction . . . due to the risk that the jury will be misled or confused by 
the perception that the instruction represents a separate issue distinct from 
general principles of negligence.” (citations omitted). We are not alone in this 
concern. At least eighteen of our sister states, agreeing that the instruction 
confuses and misleads the jury, have prohibited its use in negligence cases. 
(footnote omitted). Ten other jurisdictions have severely limited the 
circumstances under which trial courts may instruct juries regarding unavoidable 
accident. (footnote omitted). And among the states that still retain the 
instruction, many courts have expressed concerns about its applicability in 
routine negligence cases. (footnote omitted). We share these reservations.
 
 
Id. 
at 472-73.
Finally, the 
Court justifies its result in this case by noting that erroneous instructions 
are almost never found to be reversible error. While I agree that such cases are 
rare, there are a number of reasons for this. Often, the evidence or other 
instructions in the case render the error harmless, or the harm is addressed in 
other issues.
For example, 
in Dillard, the appellant complained that the trial court had erred in 
not submitting an instruction on new and independent cause. See Dillard, 
157 S.W.3d at 430. We have previously required such an instruction when the 
evidence raises a fact question on new and independent cause. Dallas Ry.& 
Terminal Co. v. Bailey, 250 S.W.2d 379, 384 (Tex. 1952); Young v. 
Massey, 101 S.W.2d 809, 810 (Tex. 1937). Although there was evidence to 
support its submission in Dillard, that same evidence also supported the 
instruction on unavoidable accident. Because of this overlap and because the 
jury was instructed on unavoidable accident, we concluded that the failure to 
give an additional instruction on new and independent cause was not required and 
therefore harmless. See Dillard, 157 S.W.3d at 433-34.
Reinhart 
v. Young involved the converse situation. 906 S.W.2d 471 (Tex. 1995). In 
that case, the jury was given two instructions, one on sudden emergency and 
another on unavoidable accident. The plaintiff objected only to the latter 
instruction. This Court concluded that the instruction was harmless error for 
three reasons: (1) the defendant introduced ample evidence at trial to support 
the jury’s failure to find him negligent; (2) the plaintiff failed to object to 
the sudden emergency instruction which reiterated much of the unavoidable 
accident instruction; and (3) none of the witnesses or counsel referred to the 
term “unavoidable accident” during the trial. Id. at 473-74.
Although the 
Court apparently recognizes that the facts and circumstances in Reinhart 
are completely at odds with those here, it nevertheless concludes that the 
result should be the same: “As in Reinhart, the evidence in this case 
does not indicate ‘that the unavoidable accident instruction in any way caused 
the case to be decided differently than it would have been without it.’” 
___­­­ S.W.3d at ___ (quoting Reinhart, 906 S.W.2d at 473). 
Thus, it does not apparently matter that (1) the Reinhart defendant 
introduced ample evidence that it was not negligent, while BBB virtually 
admitted that it was; (2) the Reinhart plaintiff failed to object to one 
of two overlapping inferential rebuttal instructions, while Urista objected to 
both, and the evidence did not support the submission of either instruction; or 
(3) the Reinhart defendant did not mention the offending instruction on 
unavoidable accident during the trial, while unavoidable accident was one of two 
significant themes[9] in BBB’s defense, emphasized again by 
its attorney in his closing remarks.
Why then does 
the Court conclude that the instruction here was harmless? It can only be that 
the Court does not believe that Urista’s injury was caused by the occurrence at 
BBB and that the jury would have so found had it answered the second, 
conditionally submitted question. But such speculation is beyond the purview of 
this Court. See Tex. 
Const. art. V § 6; Tex. Gov’t 
Code, § 22.225(a); Choate v. San Antonio & A.P. Ry. Co., 44 
S.W. 69 (Tex. 1898). The great weight, if not all, of the evidence is contrary 
to the jury’s actual verdict of no negligence. I therefore cannot agree that the 
erroneous instruction here was harmless.
This case is 
a rarity, however, because ordinarily the issue of charge error will be subsumed 
under the court of appeals’ analysis of the factual sufficiency of the evidence. 
Under that analysis, the court must likewise consider the entire record and all 
the evidence to determine whether a new trial should be granted. Any additional 
complaints of charge error are either collateral to that review or redundant. 
Thus, the court of appeals in this case might have rendered the same judgment by 
simply ruling on the factual sufficiency issue, but instead the court diverted 
its attention to the Casteel issue. See Crown Life Ins. Co. v. 
Casteel, 22 S.W.3d 378 (Tex. 2000).
On that 
subject, I agree with the Court that Casteel should not apply under the 
circumstances presented here. In Casteel, we concluded that it was error 
to submit a broad-form liability question which commingled valid and invalid 
theories of liability. Id. at 388-89. We found the error to be harmful 
under Texas Rule of Appellate Procedure 61.1 because it “affirmatively prevented 
the appellant from isolating the error and presenting its case on appeal.” 
Harris County v. Smith, 96 S.W.3d 230, 233 (Tex. 2002) (citing 
Casteel and applying its rationale). In this case, unlike Casteel, 
we have a single liability theory, negligence, coupled with an unavoidable 
accident instruction that should not have been a part of the court’s charge.
Whereas the 
charge error in Casteel prevented an appellate court from determining 
whether the jury’s verdict might have been premised on an invalid legal theory, 
there is no similar mystery in this case. See Casteel, 22 S.W.3d at 388. 
The trial court instructed the jury that it would be misconduct to disregard the 
court’s instructions, and it is reasonably clear that the jury therefore 
considered unavoidable accident and the other instructions when deciding the 
question of BBB’s negligence. It is also apparent that the jury failed to find 
that BBB’s negligence was a proximate cause of the occurrence in question. 
Unlike Casteel, the charge error in this case did not obscure the 
verdict’s meaning nor did it prevent Urista from presenting the consequences of 
that error to the appellate courts. See Casteel, 22 S.W.3d at 388 (citing 
second prong of harmless error standard in Tex. R. App. P. 61.1, 44.1(a)); 
Harris County, 96 S.W.3d at 233 (same). In short, there is no uncertainty 
as to the jury’s verdict. The issue then is not whether the error “probably 
prevented the appellant from properly presenting the case to the appellate 
courts” but rather as the Court says whether the error “probably caused the 
rendition of an improper judgment.” Tex. 
R. App. P. 61.1; see also Tex. R. App. P. 44.1(a)(1).
Although I 
disagree that the charge error in this case presents a Casteel problem 
which affected the presentation of the appeal, I nevertheless agree with the 
court of appeals’ judgment remanding the case for a new trial. The charge error 
in this case obviously confused the jury. This is apparent from its verdict and 
a review of the whole record which rebuts the jury’s answer to the only question 
it considered. Because this Court does not confine its review to the verdict 
actually rendered in this case or the evidence supporting that verdict, I 
respectfully dissent.
 
 
__________________________________________
David M. 
Medina
Justice
 
 
Opinion 
delivered:         December 29, 2006
 








[1] Q. Now, on the day of this incident, we don’t have a 
dispute, do we, that trash cans fell and hit Mr. Urista on the head, do 
we?
 
A. Trash cans did fall. Other things were knocked down 
as well. I’m not sure exactly what hit Mr. Urista. It could have been a plate, 
for all I know.
 
Q. Could have been, its your — 
 
A. Could have been a trash can too, 
definitely.
 
Testimony of David Traxler, district manager for Bed, 
Bath & Beyond.

[2] Q. If Reggie had been doing his job the way he was 
supposed to be doing it that day, and paying attention during that day, Mr. 
Urista would not have been injured, would he?
 
A. I don’t believe so, no.
 
Q. And we’ve established that nobody else was involved 
in this, in causing Mr. Urista to get hit on top of the head and knock[ed] to 
the ground except Reggie; is that correct?
 
A. Right.
 
* * *
 
Q. If he’s up there dealing with those trash cans in 
such a manner that it pulls them over and knocks them off, it would be Bed, Bath 
& Beyond’s position that you weren’t negligent that day?
 
A. I think he — again, I would speculate because I 
wasn’t there. But I believe he caused the accident. I don’t believe it was his 
intent or acting in an unsafe manner, it was simply a case of human error that 
he knocked a trash can over.

[3] BBB concedes error but argues that it “is important to 
recognize here that the erroneous submission of an unavoidable accident 
instruction, as submitted here, does not equate to automatic harm or automatic 
reversal.”

[4] In Hill v. Winn Dixie Texas, Inc., 849 S.W.2d 
802,803 (Tex. 1992) we said that “[a]n unavoidable accident instruction is 
proper only when there is evidence that the event was proximately caused 
by a nonhuman condition and not by the negligence of any party to the event.” 
(emphasis added).

[5] The jury was given the following instructions on new 
and independent cause and unavoidable accident:
 
“New and independent cause” means the act or omission of 
a separate and independent agency, not reasonably foreseeable, that destroys the 
causal connection, if any, between the act or omission inquired about and the 
occurrence in question and thereby becomes the immediate cause of such 
occurrence.
 
An occurrence may be an “unavoidable accident,” that is, 
an event not proximately caused by the negligence of any party to 
it.

[6] See Morgan v. Compugraphic Corp., 675 S.W.2d 
729, 731 n.2 (Tex. 1984)(explaining that while a proximate cause question 
inquires whether the defendant is liable for the event, the damages question 
inquires whether there is a causal link between the event and the plaintiff’s 
injuries); see also Comment to Pattern Jury Charge 8.2 (explaining that 
the issue of the existence of a disputed injury is subsumed under a damages 
question, which includes the phrase “if any”). 

[7] See Tex. 
R. Civ. P. 226a (“You must not decide who you think should win and then 
try to answer the questions accordingly. Simply answer the questions, and do not 
discuss nor concern yourselves with the effect of your 
answers.”).

[8] In addition to the testimony of BBB’s representative at 
trial, its incident report prepared at the time of the accident unequivocally 
recited that the falling trash cans had hit Urista in the head.

[9] The other defensive theme was that Urista was not 
injured by the falling trash cans, but as previously mentioned the jury did not 
reach that question because of the conditional 
submission.