**Evvy May HUKILL and Bill Hukill, Appellants,**

v.

**H.E.B. FOOD STORES, INC., and H.E.B. Grocery Company, each doing business as "H.E.B." and Both doing business as H.E.B. Food Stores, and as H.E.B. Food Stores, Inc., Appellee.**

**No. 13–87–374–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1988.

Rehearing Denied Sept. 22, 1988.

William J. Chriss, Corpus Christi, for appellants.

Rudy Gonzales, Jr., Chris J. Rodriguez, Corpus Christi, for appellee.

Before DORSEY, UTTER and KENNEDY, JJ.

## OPINION

DORSEY, Justice.

Appellant, Evvy May Hukill, brought suit against appellee, H.E.B. Food Stores, Inc., for personal injuries resulting from her slip and fall in an H.E.B. store.[1] The jury found neither party negligent, and the trial court then entered a take-nothing judgment, of which appellant now complains in five points of error. We reverse and remand.

On July 15, 1984, Mrs. Hukill entered appellee's Annaville store in Corpus Christi, Texas. While shopping, she slipped in a puddle of children's bubble blowing solution and fell, injuring her knee. Appellant's third and fourth points of error assert that the trial court erred in refusing to grant a new trial because the jury's responses to Special Issues 2 and 3 are against the great weight and preponderance of the evidence. These issues read as follows:

### SPECIAL ISSUE NO. 2

Did H.E. Butt Grocery Co. know, or in the exercise of ordinary care should they have known, that the liquid was on the floor?
Answer: "Yes" or "No.".
Answer: <u>No</u>

---

1. Bill Hukill, her husband, joined the suit seeking to recover for loss of household services and loss of consortium.

If you have answered Special Issue No. 2 "yes," and only in that event, then answer the following Issue; otherwise do not answer same.

## SPECIAL ISSUE NO. 3

Was H.E. Butt Grocery Co.'s failure to clean the liquid negligence?

Answer: "Yes" or "No".

Answer: ___N/A___

■ Courts of appeal have jurisdiction to determine whether the jury's affirmative answer is supported by the evidence or whether its failure to find affirmatively is against the great weight and preponderance of the evidence. *Cropper v. Caterpillar Tractor Company,* 754 S.W.2d 646 (1988). In determining either question, all of the evidence will be considered. Before we can reverse on such a point of error, we must detail the evidence and clearly state why the jury's finding is so against the great weight and preponderance of the evidence to be manifestly unjust and why it shocks our conscience. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

It is within the jury's province to "judge the credibility of witnesses and the weight to be given their testimony, and to resolve conflicts and inconsistencies in the testimony of any one witness as well as testimony of different witnesses." *Salazar v. Hill,* 551 S.W.2d 518, 520 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). *See also* Approved Jury Instructions, Rule 226a, Texas Rules of Civil Procedure. We are sensitive to the tension between the constitutional right of a litigant to have the jury determine disputed facts and factual review by courts of appeal.

When the jury fails to make an affirmative finding and complaint is made on appeal, the traditional test is easily stated: whether the verdict is so against the great weight and preponderance of the evidence to be manifestly unjust. That requires all of the evidence, although viewed consistently with the verdict, to preponderate against it, so as to mandate an affirmative response from the jury.

■ At trial, appellant testified that while she was walking down an aisle in appellee's store a little after 12:00 noon, her right foot slipped and she fell, first on to her left knee and then on to her buttocks. Then she noticed that the liquid she was sitting in was "clear" and "soapy" and that there was an empty bottle of bubble blowing solution underneath the shelf next to her. She placed her left hand in the center of the puddle in an attempt to get up, but her hand slipped because the substance was wet and slick. Appellant wiped her hand on her pants and then, reaching outward several inches, found an area which felt "sticky." She was then able to push herself up off the floor. There was no evidence of tracks through the solution nor otherwise of its condition on the floor to indicate it had been walked through.

Appellant called Edgar Kunkel, a chemical engineer, as her expert witness. Kunkel had conducted several tests on the drying time of bubble blowing solutions such as that on the floor. He stated that according to these tests, in order for the solution to have partially dried and become "sticky" on the outer edges, as appellant testified it did, the substance would have had to remain on appellee's floor three to five hours.

Appellee's cross-examination established that Kunkel: 1) did not conduct any type of independent chemical analysis of the solution; 2) failed to take into account the air movement at appellee's store; 3) did not duplicate the store's temperature; 4) failed to perform any type of friction test on the flooring used by H.E.B.; and 5) failed to account for the fact that appellant fell in the solution, causing it to be displaced outward, thus disturbing the former edges of the puddle.

H.E.B. store manager Douglas Cowan testified that a maintenance crew should sweep, mop, and wax the floor each day between midnight and 8:00 a.m.; before the crew is discharged at 8:00 a.m., the store manager should walk throughout the store with the maintenance supervisor inspecting all the aisles. The store employees tour the store every two hours to check for spilled items; thus, it was "very unlikely"

that a substance would remain on the floor undetected for three or more hours prior to the fall. Cowan admitted that the only way such an accident could occur would be through employee negligence. The aisle in which the fall occurred has a lot of traffic around the time of Mrs. Hukill's fall, as it is one of the main routes to the area of the store in which cold beer is kept. Cowan was not on duty on the day of the fall and had no first hand knowledge of circumstances surrounding the incident.

Appellant relied almost entirely on Kunkel's testimony as to how long the substance was on the floor in her attempt to prove appellee negligently failed to discover and remove the solution. The jury apparently did not believe the liquid was on the floor from three to five hours before the fall. As trier of fact, the jury could give the seemingly conflicting evidence as much weight as it deemed appropriate. We conclude that the jury resolved evidentiary conflicts against appellant. She failed to carry her burden of persuasion that the defendant knew, or should have known, the substance was on the floor. *See Salazar*, 551 S.W.2d at 520.

Although appellee called no eyewitnesses or experts to the stand, it is settled law that a jury's failure to find those facts of negligence essential to the appellant's recovery need not be supported by affirmative evidence. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973); *Salazar*, 551 S.W.2d at 520. We therefore find that the responses to Special Issues 2 and 3 are not so against the great weight and preponderance of the evidence as to be manifestly unjust. Points three and four are overruled.

■■■ Appellant argues in her second point of error that the trial court erred in instructing the jury on unavoidable accident, although no special issue was addressed to it. The instruction was from Pattern Jury Charges 3.04:

You are instructed that an event may be an "UNAVOIDABLE ACCIDENT"

which is an event or occurrence which is not proximately caused by the negligence of any party to it.

It is well settled that the issue of unavoidable accident must find some support in the evidence to authorize its submission.[2] *Hicks v. Brown*, 136 Tex. 399, 151 S.W.2d 790, 792 (1941). The instruction should be given only if there is evidence that the accident was caused by some *extraneous condition* which is not attributable to either party. *Leatherwood Drilling Co. v. TXL Oil Corp.*, 379 S.W.2d 693, 697 (Tex. Civ.App.—Dallas 1964, writ ref'd n.r.e.). As the Texas Supreme Court stated, we must determine whether appellee has "presented a theory under which the accident could have happened, notwithstanding all the parties to the transaction exercised the degree of care required by law." *Orange & N.W.R. Co. v. Harris*, 127 Tex. 13, 89 S.W.2d 973, 974 (1936).

In *Harris*, the plaintiff sued Orange & Northwestern Railroad Company for injuries received when his automobile collided with a flat car belonging to the defendant. The evidence reflected that the plaintiff was not negligent in approaching the crossing and that the railroad company was not negligent in failing to warn motorists. The evidence also showed that an arclight owned by the city had temporarily blinded the plaintiff just before his collision with the flatcar. The court held that the existence of the archlight was an extraneous condition which raised the issue of unavoidable accident. *Harris*, 89 S.W.2d at 975; *see also Lemos v. Montez*, 680 S.W.2d 798 (Tex.1984).

Likewise, in *Yarborough v. Beaner*, 467 S.W.2d 188, 190 (Tex.1971), the Court held that a child's lack of capacity to be negligent entitled the defendant to an issue on unavoidable accident. The instruction is most often used to inquire about the causal effect of some physical condition or circumstance such as fog, snow, sleet, wet or slick pavement, or obstruction of view. *See id.* at 191. However, the *Yarborough* Court,

---

**2.** We note that the "issue" of unavoidable accident is now properly submitted as an instruction or definition rather than a question since it takes the form of an inferential rebuttal. *Lemos v. Montez*, 680 S.W.2d 798, 800 (Tex.1984).

in effect, likened the behavior of the child to a natural event over which neither party had control which, if believed by the jury, would absolve the defendant of liability.

■ In contrast, there was no evidence of the existence of such a condition in the case at bar. Absent affirmative evidence that an extrinsic, uncontrollable event caused the injury, such as an act of God, the instruction on unavoidable accident should not be given. When the jury's inquiry is whether the negligence of a party is the proximate cause of the injury, and the burden of proof and persuasion is on the plaintiff to convince the jury that the defendant's breach of duty caused the injury, to charge on unavoidable accident is in effect to give the jury an attractive alternative to the difficult determination of negligence. Such a charge is a third alternative to both the negligence and causation by the parties, and as such constitutes an unconscious or hidden rebuttal to the essential issues to be determined, because it directs the jury away from the real issues submitted and the burden imposed by law of proof by the parties.

In *Acord v. General Motors Corp.*, 669 S.W.2d 111 (Tex.1984), the court held that, although an instruction may be a proper statement of the law, it is improper to give it if it serves to distract the fact finder. We therefore hold that the submission of the instruction was error.

We also find the instruction was "reasonably calculated to cause, and probably did cause, rendition of an improper judgment" under Tex.R.App.P. 81(b)(1). The evidence creates a close question as to whether the jury's failure to find that the appellee should have known of the spill was against the great weight of the evidence. There was no evidence of the procedures followed by the store employees on the day of the fall. In fact, appellee offered no explanation of the accident other than the testimony of a store manager who was familiar with H.E.B.'s routine safety procedures and what "should" have been done. Hence, while the evidence was sufficient to support the jury's finding of no negligence, it was by no means overwhelming. An improper instruction is more likely to nudge and tilt the jury in a harmful manner when the evidence is close.

Additionally, during deliberations, the jury foreman submitted a note to the court which read:

> We have unanimously found that the event was an "unavoidable accident." Are answers to special issues covering monetary compensations required in this event. Special Issues 8 and 9.

This statement clearly indicates the jury based its verdict on the alluring but improper theory of unavoidable accident. Point of error two is sustained.

Appellant's remaining points are indispositive and need not be addressed.

The judgment of the trial court is REVERSED and the cause REMANDED for new trial.